**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ENVIROMENTAL SERVICES, INC.

                      Plaintiff,

        -vs.-

RECYCLE GREEN SERVICES, INC., UNITY
FUELS, LLC, GREASE LIGHTNING, A UNITY
FUELS COMPANY, CAESAR FIGUEROA,
EDWARD FIGUEROA, SR., EDWARD
FIGUEROA, JR., KEVIN JOHNSON,
SALVATORE GIORDANO and JOHN DOES
1-5,

                      Defendants.
--------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
13-cv-4568 (ADS)(WDW)

<u>**APPEARANCES:**</u>

**Certilman Balman Adler & Hyman, LLP**
*Attorneys for the Plaintiff*
90 Merrick Avenue
East Meadow, New York 11554
      By:  Paul B. Sweeney, Esq.
           Tony G. Dulgerian, Esq., Of Counsel

**Harry R. Thomasson, Esq.**
*Attorney for the Defendants Recycle Green Services, Caesar Figueroa, Edward Figueroa, Sr.,
Edward Figueroa, Jr., Kevin Johnson, and Salvatore Giordano*
3280 Sunrise Highway, Suite 112
Wantagh, New York 11793

**George J. Szary, Esq.**
*Attorney for the Defendants Unity Fuels, LLC and Grease lightning*
41 State Street, Suite 901
Albany, New York 12207

**SPATT, District Judge**.

       On August 13, 2013, the Plaintiff Environmental Services, Inc. ("ESI" or the "Plaintiff")

commenced this action against the Defendants, alleging violations of the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d).  The Plaintiff also alleged

New York State law claims of conversion and misappropriation; unjust enrichment, which it now

withdraws; tortious interference with contract; deceptive business practices; and conspiracy.

On October 31, 2013, the Defendants Unity Fuels, LLC and Grease Lightning (the "Unity

Defendants") moved pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 8, 9(b),

and 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be

granted, or in the alternative under Fed. R. Civ. P. 12(d), for summary judgment dismissing the

complaint.

On November 12, 2013, the Court "so-ordered" a voluntary dismissal as against the

Defendant Pristine Properties, LLC.

On November 22, 2013, the Defendants Recycle Green Services, Inc. ("RGS") Kevin

Johnson, Caesar Figueroa, Edward Figueroa, Sr., Edward Figueroa, Jr., and Salvatore Giordano

(collectively the "RGS Defendants") moved separately pursuant to Fed. R. Civ. P. 8(a), 9(b), and

12(b)(1), and 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can

be granted.

On January 15, 2014, the Plaintiff cross-moved pursuant to Fed. R. Civ. P. 65 for a

preliminary injunction against the remaining Defendants enjoining them "from (1) interfering

with servicing ESI's customers reflected in the contracts . . . which contracts were improperly

interfered with by Defendants; (2) [] further interfering with any of ESI's contracts with its

remaining customers; and (3) stealing any further waste cooking oil from ESI, and for such other

and further relief as this Court may deem just and proper."  The Plaintiff did not move for a

temporary restraining order or an evidentiary hearing with regard to the preliminary injunction.

On February 21, 2014, the RGS Defendants, although they had not filed an answer or counter-claims, cross-moved for a preliminary injunction enjoining and/or directing the Plaintiff "(1) from utilizing surreptitious GPS technology on Plaintiff's competitors' vehicles, including but not limited to Defendants herein; (2) to immediately reveal to Defendants the identity and last known addresses of all individuals and businesses utilizing such surreptitious GPS technology on Plaintiff's competitors' vehicles, including the dates of such use and the targets of such use for each and every instance such surreptitious GPS technology has ever been utilized by or for Plaintiff; (3) to immediately turn over to Defendants all documents indicating the use of such surreptitious GPS technology on Plaintiff's competitors' vehicles for each and every instance such surreptitious GPS technology has ever been utilized by or for Plaintiff, including, but not limited to, GPS reports, notes taken by any individual on behalf [of] Plaintiff while utilizing such TPG technology, contracts with any individual or business utilizing such GPS technology by or for Plaintiff, and the identity of all types of GPS devices utilized by or for Plaintiff against its competitors; (4) following the production of information moved for in paragraphs numbered 2 and 3 herein, to appear for an evidentiary hearing before this Court to determine the extent of Plaintiff's use of such surreptitious GPS technology against its competitors; and (5) for such other and further relief as this Court may deem just and proper."

The three motions are fully briefed.  For the following reasons, the Court (1) grants in part and denies in part the Defendants' motions to dismiss; (2) denies the motion by the RGS Defendants for a preliminary injunction; and (3) grants the motion by the Plaintiff for a preliminary injunction.

3

## I.  BACKGROUND

For purposes of the motion to dismiss, the following facts are drawn from the complaint and construed in a light most favorable to the Plaintiff, ESI.

ESI is a New York corporation with its principal place of business in New York.  ESI is engaged in the business of purchasing from restaurants kitchen waste cooking oil and, in turn, processing and selling the oil to be turned into biofuel and/or animal feed ingredient.

Unity Fuels is a New York corporation managed by the non-parties Jeff Deweese and Malek Jalal.

Grease Lighting, wholly owned and operated by Unity Fuels, is a domestic corporation with its principal place of business in New York.  Grease Lightning also maintains a processing plant in Newark, New Jersey.

RGS is a New York corporation with its principal place of business in New York.  RGS is principally owned by Caesar Figueroa.

Edward Figueroa, Sr. is a partner of RGS.

Former Defendant Pristine Properties, LLC is a New York limited liability corporation with its principal place of business in New York.  Pristine Properties is owned by Edward Figueroa, Sr.

Edward Figueroa, Jr. is the nephew of Caesar Figueroa and son of Edward Figueroa, Sr., and is employed by RGS.

Kevin Johnson is an officer and partner of RGS and holds the position of treasurer of the company.

Salvatore Giordano is also an officer and partner of RGS, where he holds the position of Vice President.

4

John Does 1-5 are individuals employed by and/or allegedly conspiring with the Defendants to effectuate the Defendants' racketeering, theft, and tortious interference.

ESI alleges that Unity, Grease Lightning, and RGS have not obtained the requisite permits and licenses for the collection, transportation, and processing of used cooking oil (Compl. ¶ 18-22.)

When ESI procures oil from a customer, ESI and the customer enter into a written contract, which generally provides that ESI will pay the customer either by collection or per gallon collected, for a 36 month period, which term is automatically renewable for additional 12 month periods.  The contracts are terminable prior to the 36 month period by the customer under certain circumstances and only if the specific notice requirements are followed, such as 90 days written notice and/or an opportunity for ESI to match a better competing offer.

In order to reduce the risk of theft, ESI also provides its customers with a branded container, with a locking device, to deposit its used cooking oil, which are typically placed outside and behind the customer's premises.  The contracts also provide that any competitors' equipment placed at the customer's place of business constitutes a breach of the procurement contract.

According to ESI, in recent years, widespread theft of used kitchen oil, particularly by new, unlicensed operators, has plagued the industry (Id. ¶ 30.)  The Plaintiff notes that although some of these operators have been arrested, the charges associated with such arrests are too minimal to deter repeat offenses (Id. ¶ 31.)

Upon the Plaintiff's information and belief, Unity Fuels entered into the business of collecting used kitchen waste oil in 2010, and established Grease Lightning to conduct such

5

business (Id. ¶ 35.)  In or about 2011, the individual defendants formed RGS for the purpose of entering the kitchen waste oil procurement business (Id.)

The complaint alleges that the Defendants have been working in concert since 2011 to steal ESI's oil from the containers located in its customers' premises so as to intentionally cause ESI's customers to falsely believe that ESI has been collecting, but not paying for, the customer's used cooking oil.  According to ESI, RGS and/or Grease Lightning then fraudulently induce ESI's customers to breach their contracts with ESI and enter into new contracts with RGS and Grease Lightning.

ESI contends that the Defendants are aware that, when the theft occurs, the customers are under contract with ESI because the secured receptacles contain ESI's logo.

ESI alleges several instances of theft by the Defendants.

For instance, on April 24, 2012, Edward Figueroa, Jr. was driving a white Ford van owned by RGS (Id. ¶ 44.)  A GPS tracking device on the van revealed that the van stopped at five restaurants that were at the time under contract with ESI (Id.)  That night, ESI contends that each of the restaurants had the used cooking oil stolen from their ESI-designated containers. Surveillance photographs taken the next day allegedly show Edward Figueroa, Jr. driving the same van and delivering the stolen used cooking oil to Grease Lightning's facility in Hicksville (Id.).

In addition, on May 21, 2013, RGS's white van pulled into a shopping mall in Farmingville where three restaurants under contract with ESI were located (Id. ¶ 48.)  The ESI containers located at these restaurants had their locks cut; the lids removed; and were vandalized (Id.)  The incident was reported to the police, but no arrests were made (Id.)

The Plaintiff also alleges that, on numerous occasions, while restaurants were under contract with ESI, it discovered that the locking mechanism on the oil container was broken, the lid was pried open; and the oil inside the receptacle was stolen.  The Plaintiff specified dates and locations of these occurrences.

The Plaintiff also asserts other instances where Grease Lightning stole oil from other legal operators in the industry.  For example, on August 21, 2011, two individuals driving a white van bearing a Grease Lightning logo were arrested for stealing oil form containers belonging to Darling International, Inc. ("Darling") in Newark (Id. ¶ 51.)

The Plaintiff further alleges that, upon stealing the waste oil, RGS and Grease Lightning transported the oil to Grease Lightning's storage facility in Hicksville, where it was accepted with knowledge of its stolen nature.  Grease Lightning then allegedly transports the waste oil across state lines to its processing plant in New Jersey, where, with RGS's knowledge, it is processed into biofuel and/or an animal feed ingredient for farm animals and sold in interstate commerce.

The scam alleged by ESI is described as follows:  After several months of stealing ESI's oil, the Defendants induce ESI's customers into believing that ESI is collecting, but not paying for, their oil, in violation of their procurement contracts with ESI. (Id. ¶ 57.)  In this regard, the Defendants jointly created a termination letter which they give to ESI's customers to sign and send to ESI.  RGS and Grease Lightning used the identical letter regardless of whether the customer contracts with RGS or with Grease Lightning.  (Id. ¶ 58.)  The Termination Letter states that the customer has "decided to use another delivery service due to their ability to serve my needs better" and is intended to make ESI falsely believe that it is losing customers due to inefficiency in the procurement services it provides, as opposed to theft by the Defendants (Id. at

¶ 60).  After ESI's customer signs the Termination Letter, it is faxed to ESI from Pristine

Properties, the company owned by Edward Figueroa, Sr. (Id ¶ 62.).  The Plaintiff asserts that

none of the Termination Letters comport with the termination provisions in the ESI contracts

with its customers (Id. ¶ 64.)

      The Plaintiff further alleges that large fluctuations in the oil collected by ESI from

containers on the customer's premises, as happened here, is highly unusual absent theft because

restaurants typically use a consistent amount of cooking oil each month (Id. ¶ 66.)  In this regard,

the Plaintiff identifies 19 specific restaurants which had large fluctuations in the amount of oil

collected by ESI during the relevant time period (Id. ¶ 72.)  The Plaintiff asserts that each of

these restaurants improperly terminated their procurement contract with ESI and subsequently

contracted with RGS.

      The Plaintiff estimates a loss 2.7 million gallons in waste oil collected from 2011 to

2012, despite increases in the number of supplier accounts, due to theft, which cost ESI profits of

over $4 million (Id. ¶ 32.)

      On December 19, 2012, ESI sent a cease and desist letter to RGS, stating that RGS was

wrongfully servicing certain restaurants that were under contract with ESI; that RGS had

tortuously interfered with ESI's contracts; and demanding that RGS cease servicing ESI's

customers and return its containers to ESI.  However, RGS allegedly did not comply with that

letter.

      Between April 23, 2013 and May 10, 2013, ESI received five Termination Letters from

Grease Lightning (Id. ¶ 88.). As with RGS, each of those five restaurants allegedly experienced

significant fluctuations in the amount of oil collected by ESI in the months preceding the letter

(Id. ¶ 89.)

On May 21, 2013, ESI sent a cease and desist letter to Grease Lightning, stating that Grease Lightning was servicing the five restaurants that were under contract to ESI, and demanding that Grease Lightning cease servicing ESI's customers and return its containers to ESI. Again, however, Grease Lightning allegedly did not comply.

On August 13, 2013, ESI commenced the instant action. On October 31, 2013, the Unity Defendants moved pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. Alternatively, the Unity Defendants seek to convert their motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). The Unity Defendants submitted an affidavit from Deweese disputing the allegations contained in the complaint.

On November 22, 2013, the RGS Defendants moved separately pursuant to Fed. R. Civ. P. 8(a), 9(b), and 12(b)(1), and 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. In support of that motion, the RGS Defendants submitted declarations from, among others, Harry Thomasson, Kevin Johnson, Caesar Figueroa, Edward Figueroa, Sr., Edward Figueroa, Jr., and Salvatore Giordano.

In opposition, the Plaintiff submitted an affidavit from David Parisi, the Chief Financial Officer and Director of Operations of ESI, in which he states that ESI requires significant discovery before it can oppose a summary judgment motion.

The Court cannot consider the Defendants' or the Plaintiff's evidentiary submissions in resolving the motion to dismiss. In adjudicating a motion under Rule 12(b)(6), the Court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers

if plaintiff has knowledge or possession of the material and relied on it in framing the complaint,

(4) public disclosure documents required by law to be, and that have been, filed with the

Securities and Exchange Commission, and (5) facts of which judicial notice may properly be

taken under Rule 201 of the Federal Rules of Evidence." In re Merrill Lynch & Co., 273 F. Supp.

2d 351, 356–57 (S.D.N.Y. 2003) (internal citations omitted), aff'd in part and vacated in part on

other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25 (2d

Cir. 2005), vacated on other grounds, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006);

see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district

court . . . could have viewed [the documents] on the motion to dismiss because there was

undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim");

Brodeur v. City of N.Y., 04–CV–1859 (JG), 2005 WL 1139908, at *2–3, 2005 U.S. Dist. LEXIS

10865, at *9-10 (E.D.N.Y. May 13, 2005) (stating that the court could consider documents

within the public domain on a Rule 12(b)(6) motion to dismiss).

      In its discretion, the Court declines to convert the instant motion into a motion for

summary judgment.  "Federal courts have 'complete discretion to determine whether or not to

accept the submission of any material beyond the pleadings' offered in conjunction with a Rule

12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to

one for summary judgment." Carione v. United States, 368 F. Supp. 2d 186, 191 (E.D.N.Y.

2005) (citations omitted).  "Given the nature of the claims and allegations in this particular

lawsuit, the Court concludes that plaintiffs in this action are entitled to discovery before having

to oppose a motion for summary judgment, and thus conversion of the motion is unwarranted."

Hoy v. Inc. Vill. of Bayville, 765 F. Supp. 2d 158, 164 (E.D.N.Y. 2011); see also Saca v. Dav–El

Reservation System, Inc., 600 F. Supp. 2d 483, 487 (E.D.N.Y. 2009)(declining to convert a

motion to dismiss to one for summary judgment on whether the taxicab exemption of the Fair Labor Standards Act applied until discovery was compete).

## II. DISCUSSION

A.  The Standard on a Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted."  In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In assessing plausibility on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 556 U.S. at 664, and afford the plaintiff every reasonable inference. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  However, allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." Iqbal, 556 U.S. at 681 (internal quotation marks and citations omitted).

According to Iqbal/Twombly, the complaint survives a motion to dismiss, as long as its allegations of "factual matter, accepted as true" sufficiently "raise a right to relief above the speculative level." Iqbal, 556 U.S. at 678; Twombly, 550 U .S. at 555–56.  At the same time, the Complaint cannot conclusorily recite the elements of a claim. Ibid.  The factual allegations are sufficient when they allow this Court, at a minimum, to infer that a claim is plausible – an inference which is more than possible, but less than probable – and thereby warrants proceeding with discovery. Ibid.

11

1.   <u>The RICO Causes of Action</u>

The civil RICO statute makes it "unlawful for any person employed or associated with

any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18

U.S.C. § 1962(c); <u>see also</u> <u>Rothstein v. GMAC Mortgage, LLC</u>, 12 Civ. 3412 (AJN), 2013 WL

5437648, at *10 (S.D.N.Y. Sept. 30, 2013).  "To establish a claim for a civil violation of section

1962(c), 'a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity.'" <u>Kalimantano GmbH v. Motion in Time, Inc.</u>,

939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013), citing <u>Cofacredit, S.A. v. Windsor Plumbing Supply</u>

<u>Co.</u>, 187 F.3d 229, 242 (2d Cir. 1999) (quoting <u>Azrielli v. Cohen Law Offices</u>, 21 F.3d 512, 520

(2d Cir. 1994)).

"Where a civil RICO claim is predicated on acts of fraud, a plaintiff must comply with

Federal Rule of Civil Procedure 9(b)'s requirement to plead with particularity." <u>Lubin v. Dubin</u>,

CV 13-6619, 2014 WL 794313, at *7 (E.D.N.Y. Feb. 24, 2014).  The Second Circuit has

interpreted Rule 9(b) to require that a complaint: "(1) specify the statements, oral or written, that

the plaintiff contends were fraudulent, either as misrepresentations or containing fraudulent

omissions; (2) identify the speaker or the writer; (3) state where, when and to whom the

statements were made; and (4) explain why the statements were fraudulent." <u>S.E.C. v. Lee</u>, 720

F. Supp. 2d 305, 338 (S.D.N.Y. 2010).  Although "Rule 9(b) permits scienter to be demonstrated

by inference, this must not be mistaken for license to base claims of fraud on speculation and

conclusory allegations." <u>Wood ex rel. U .S. v. Applied Research Associates, Inc.</u>, 328 F. App'x

744, 747 (2d Cir. 2009).  When claims are alleged against multiple defendants, "guilt by

association is impermissible." <u>Lee</u>, 720 F. Supp. 2d at 321.

It is not clear whether Rule 9(b) applies to every element of a RICO claim or simply to those elements involving fraud. Compare D. Penguin Bros. Ltd. v. City Nat. Bank, 13 CIV. 0041 (TPG), 2014 WL 982859, at *3 (S.D.N.Y. Mar. 11, 2014)( "[A]ll elements of a RICO claim must satisfy the heightened pleading requirement set forth in Rule 9(b) . . . .'"), with Casio Computer Co., Ltd. v. Sayo, 98CV3772 (WK), 2000 WL 1877516, at *18 (S.D.N.Y. Oct. 13, 2000) ("Where a violation of Section 2314 is pleaded as a predicate act in a RICO claim, those elements which involve fraud must be pleaded with particularity.")

However, the Court finds that, under either standard, the Plaintiff's well-pled complaint states all the elements of a substantive RICO claim.

i.     Two or More Predicate Acts

To be liable under the RICO statute, a defendant must commit "at least two acts of racketeering activity," "the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5); see DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (internal citation omitted).

Here, the Plaintiff has alleged the commission of predicate acts, namely: transportation of stolen goods in violation of the National Stolen Property Act ("NSPA"), 18 U.S.C. § 2314 and sale of stolen goods in violation of the NSPA, 18 U.S.C. § 2315.

Section 2314 of the NSPA prohibits the transport "in interstate or foreign commerce any goods . . . of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . ."  Section 2315 prohibits the receipt or possession of "any goods . . . of the value of $5,000 or more, which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted or taken . . ."

13

With regard to these predicate acts, the Court notes that the complaint adequately contains specific allegations detailing the Defendants' theft of ESI's oil, including dates, times, locations, and the customers affected.

ESI also alleges that the Defendants committed the predicate act of wire fraud in violation of 18 U.S.C. § 1343.  Where the predicate alleged is a violation of the wire fraud statute, the pleader need only allege that the "wire fraud w[as] in furtherance of a larger scheme to defraud," and "the communications themselves need not have contained false or misleading information." Calabrese v. CSC Holdings, Inc., 283 F. Supp. 2d 797, 808 (E.D.N.Y. 2003); see also In re Sumitomo Copper Litig., 995 F. Supp. 451, 456 (S.D.N.Y. 1998).

Here, ESI alleges, in detail, the dates, and circumstances regarding the Defendants' use of the wires to fax the Termination Letters to ESI to effectuate its scheme to steal ESI's customers under false pretenses.

Therefore, the Court finds that the Plaintiff adequately pleads the element of two or more predicate acts.

> ii.    Enterprise

A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  The Second Circuit has explained that a "RICO enterprise" "is proved by evidence of an ongoing organization, formal or informal, and by evidence that various associations function as a continuing unit." U.S. v. Applins, 673 F.3d 59, 73 (2d Cir. 2011) (quoting U.S. v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981)).

In this case, ESI has pleaded that the Defendants are interrelated and working in concert to steal ESI's oil, and then its customers.  For instance, the complaint alleges that GPS tracking

reports and photographs show that the RGS Defendants brought their stolen oil directly to Grease Lightning.  The Court also takes note of the fact that Grease Lightning and the RGS Defendants allegedly sent identical Termination Letters on behalf of ESI customers, which suggests a coordinated effort to defraud.

Thus, the Plaintiffs have adequately pleaded a RICO "enterprise."

iii.    A Pattern of Racketeering Activity

To state a claim under Section 1962(c), a plaintiff must also allege a "pattern of racketeering activity," which is defined as "at least two acts of racketeering activity . . . within ten years . . . after the commission of a prior act of racketeering activity." Lorber v. Winston, 962 F. Supp. 2d 419, 419 (E.D.N.Y. 2013) (Spatt, J.) (quoting 18 U.S.C. § 1961(5)).

In H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241, 109 S. Ct. 2893 (1989), the Supreme Court clarified the pattern requirement as one that requires continuity, which may be either closed- or open-ended.  Closed-ended continuity refers to "a closed period of repeated conduct," whereas open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition." Id. at 242, 109 S. Ct. 2893.

"To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999).  When an enterprise's business is "primarily or inherently unlawful," such a threat is generally presumed. Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008) (citations omitted);

"In contrast, when the enterprise primarily conducts a legitimate business, no such presumption arises." Li Jun An v. Hui Zhang, 13 CIV. 5064 (PKC), 2013 WL 6503513, at *8

15

(S.D.N.Y. Dec. 6, 2013) (citing <u>Spool</u>, 520 F.3d at 185). In such a case, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." <u>Spool</u>, 520 F.3d at 185. In this regard, allegations that the defendants were "trying to continue" to engage in the conduct giving rise to the RICO claim or that the scheme itself was not yet complete may be sufficient to plead open-ended continuity. <u>Azrielli v. Cohen Law Offices</u>, 21 F.3d 512, 520 (2d Cir. 1994).

Here, the Plaintiff alleges that RGS, Unity Fuels, and Grease Lightning lack the requisite permits and licenses to collect used cooking oil and further alleges that Grease Lightning has been caught stealing ESI's oil as well as the oil of Darling, another competitor.

However, the Court need not decide whether the alleged scheme is representative of the way the Defendants' business is generally conducted. This is because record indicates the Defendants continue to pose a criminal threat toward the Plaintiff – in particular, Grease Lightning has allegedly continued to illegally steal ESI's oil and customers, as recently as November 27, 2013, *after* the complaint was filed (D. Parisi Decl. ¶ 3.) Accordingly, the Court finds that the Plaintiff has pleaded a "pattern" of racketeering activity on the basis of open-ended continuity.

      iv.   <u>Proximate Cause</u>

The Second Circuit has articulated the standard for establishing the RICO causation element:

> To show injury by reason of a RICO violation, a plaintiff must demonstrate that the violation caused his injury in two senses. First, he must show that the RICO

> violation was the proximate cause of his injury, meaning "there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994). Second, he must show that the RICO violation was the but-for (or transactional) cause of his injury, meaning that but for the RICO violation, he would not have been injured. See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992).

UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 132 (2d Cir. 2010). The Supreme Court has

held that a plaintiff alleging a RICO violation need not demonstrate first person reliance to

establish causation, but proof of at least third-party reliance is required. Bridge v. Phoenix Bond

& Indem. Co., 553 U.S. 639, 658, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008) ("Of course, none

of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can

prevail without showing that someone relied on the defendant's misrepresentations.") (internal

citations and emphasis omitted).

Here, ESI specifically alleges, in the form of concrete figures, the damage caused by the

theft of ESI's oil. For instance, in 2011, ESI had contracts with 1,460 restaurants and collected

4.1 million gallons of waste oil. In 2012, ESI had contracts with 1,716 restaurants — nearly 300

more restaurants than the prior year — but collected only 1.4 million gallons of oil. (Compl. ¶

32.). The complaint further alleges that "[m]uch of the 2.7 million gallon decrease is due to

theft. The loss of 2.7 million gallons of oil has cost ESI lost profits of over $4 million." (Id.)

ESI also alleges that the Defendants' theft and destruction of ESI containers costs $750 per

container, and ESI's lost profits amounts to approximately $50,000 per week (Id. at ¶¶ 69, 71.).

Indeed, the Plaintiff alleges a nexus between the alleged theft of ESI's oil by the

Defendants; the drop in monthly oil collections by specific ESI customers; the loss of those

specific customers by ESI; and the ultimate "poaching" of particular customer by the

Defendants. Rothstein, 2013 U.S. Dist. LEXIS 141034, at *51-54 (alleging a "direct link"

17

between racketeering activities and alleged injury satisfies pleading requirement).  In short, the Court finds that ESI adequately alleges that its customers would not have wrongfully terminated their contracts with ESI had the Defendants not engaged in their pattern of racketeering activity.

v.      Interstate Commerce

The Court further finds that ESI plausibly alleges that the stolen oil was transported in interstate commerce, primarily from New York to New Jersey.

Grease Lightning argues that ESI did not specifically allege that the wire transmissions of the Termination letters were sent through interstate commerce.  However, the complaint alleges that Grease Lightning operates out of its New Jersey and New York facilities, and Grease Lightning faxed its letter to ESI in New York.  This information is exclusively within the possession of Grease Lightning.  Thus, ESI is entitled to additional discovery on this issue before adjudication, and, at this juncture of the litigation, may plead such allegations on information and belief. Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008) (Rule 9(b) pleading "may be based on information and belief when facts are peculiarly within the opposing party's knowledge."). Thus, the Court finds that the Plaintiff has adequately plead the element of interstate commerce.

vi.      RICO Conspiracy

ESI also asserts that the Defendants "conspired" to violate Section 1962(c) of the RICO statute.  "To establish a RICO conspiracy, the plaintiff must prove that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." See e.g., Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., No. 05-5934 (DRH) (MLO), 2009 U.S. Dist. LEXIS 91291, at *21-22 (E.D.N.Y. Sept. 30, 2009).

It is not necessary to find that each defendant knew all the details or the full extent of the conspiracy, including the identity and role of every other conspirator. United States v. Boylan,

898 F.2d 230, 242 (1st Cir. 1990) ("A RICO conspiracy does not demand . . . that all defendants participate in all racketeering acts, know of the entire conspiratorial sweep, or be acquainted with all other defendants.").   "All that is necessary to prove this element of the RICO conspiracy, against a particular defendant, is to prove that he or she agreed with one or more co-conspirators to participate in the conspiracy.  Moreover, it is not necessary for the conspiratorial agreement to be express, so long as its existence can plausibly be inferred from words, actions, and the interdependence of activities and persons involved." Chubb & Son Inc. v. Kelleher, 92-CV-4484 (TLM)(RML), 2010 WL 5978913, at *4 (E.D.N.Y. Oct. 22, 2010)(citing United States v. Concemi, 957 F.2d 942, 950 (1st Cir. 1992)), report and recommendation adopted, 92-CV-4484 (TLM)(RML), 2011 WL 839553 (E.D.N.Y. Mar. 7, 2011).

Here, ESI alleges that the Defendants "did agree and conspire to violate 18 U.S.C. § 1962(c) to conduct and participate in said RICO enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d)" (Compl. ¶ 153.)  In the Court's view, the complaint states a claim of RICO conspiracy against the Defendants. Morrow v. Black, 742 F. Supp. 1199, 1208 (E.D.N.Y. 1990) ("The defendant's agreement may be inferred from circumstantial evidence of his status in the enterprise and his knowledge of the wrongdoing") (citing United States v. Teitler, 802 F.2d 606, 614 (2d Cir. 1986)).  To the extent the Defendants claim that ESI's conspiracy claim fails along with the alleged substantive RICO violations, the Court rejects that argument for the reasons set forth above.

    2.   The State Law Causes of Action

        i.     Conversion and Misappropriation

"Conversion [or misappropriation] is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights . . .

Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiffs rights." <u>T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.</u>, No. 10-CV-2843 (JG) (ARL), 2010 U.S. Dist. LEXIS 109471, at *30-31 (E.D.N.Y. Oct. 14, 2010) (citations and quotation marks omitted).  "The mere right to payment cannot be the basis for a cause of action alleging conversion." <u>Zendler Const. Co., Inc. v. First Adjustment Group, Inc.</u>, 59 A.D. 3d 439, 440, 873 N.Y.S. 2d 134 (2nd Dep't 2009)(citations and quotation marks omitted).

Here, ESI adequately pleads that the Defendants stole ESI's property – namely, the used cooking oil – from ESI'S branded containers on ESI's customers' premises.  ESI states that it has ownership, possession, and control of the used cooking oil once its customers deposit the oil into the ESI containers.  ESI notes that the containers are locked and only accessible by ESI or its customers.  The Court finds that these allegations suffice to state a claim for conversion and misappropriation.

The fact that the underlying transactions between ESI and its customers could be construed as the provision of a service by ESI rather than the purchase of goods by ESI does not, on its face, defeat ESI's claim for conversion and misappropriation.  Under either view of the subject transaction, ESI alleges a property interest in the deposited cooking oil necessary for its claim of conversion and misappropriation.  Whether ESI has proved such a property interest requires further consideration of the facts and cannot be decided as a matter of law.

  ii. <u>Tortious Interference with Contract</u>

The elements of a cause of action alleging tortious interference with a contract are: (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of the third party's breach

of that contract, and (4) damages. <u>Foster v. Churchill</u>, 87 N.Y.2d 744, 749-50, 665 N. E. 2d 153 (1996); <u>Chung v. Wang</u>, 79 A.D.3d 693, 694, 912 N.Y.S.2d 647 (2d Dep't 2010).

Here, ESI has pleaded the existence of a valid contract with its customers.  ESI also pleads that the Defendants were aware of such contracts by virtue of the fact that the "stolen" oil came from ESI branded containers and the fact that Defendants sent identical Termination Letters to ESI on behalf of ESI customers.  ESI further pleads that the Defendants intentionally procured a breach of ESI's customers' contracts by conspiring to steal ESI's oil and to induce ESI's customers into believing that ESI was collecting but not paying for oil; then contacting ESI's customers and sending the Termination Letters to ESI on behalf of ESI's customers.  In this regard, ESI alleges damages in no event less than $5 million and loss of good will.  In the Court's view, ESI has sufficiently stated a claim for tortious interference with contract and that portion of the Defendants' motions to dismiss that cause of action are denied.

### iii.   Deceptive Business Practices

New York General Business Law § 349 declares as unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  Section 349 is directed at wrongs against the consuming public. <u>See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 24, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995).

"To assert a viable claim under General Business Law § 349(a), a plaintiff must plead that (1) the challenged conduct was consumer-oriented, (2) the conduct or statement was materially misleading, and (3) damages." <u>Lum v. New Century Mortgage Corp.</u>, 19 A.D.3d 558, 559, 800 N.Y.S.2d 408 (2d Dep't 2005), <u>lv. denied</u> 6 N.Y.3d 706, 812 N.Y.S.2d 35, 845 N.E.2d 467 [2005]).  For conduct to be consumer-oriented, it must be demonstrated that it had "a

21

broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741.  Under New York law, "the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for personal, family or household purposes." Cruz v. NYNEX Info. Resources, 263 A.D.2d 285, 289, 703 N.Y.S.2d 103 (1st Dep't 2000).  Thus, private contract disputes that are unique, private in nature, or involve a so-called "single-shot" transaction do not fall within the statute's ambit. Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741.

Here, the Court finds that ESI has failed to plausibly allege that its collection of used cooking oil from certain private restaurants is a consumer-oriented business.  Accordingly, the Court grants that part of the Defendants' motions to dismiss the claim of deceptive business practices.

### iv.    Conspiracy

Although "New York does not recognize civil conspiracy to commit a tort . . . as an independent cause of action, Dickinson v Igoni, 76 A.D. 3d 943, 945, 908 N.Y.S.2d 85 (2d Dep't 2010), "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." Litras v Litras, 254 A.D. 2d 395, 396, 681 N.Y.S.2d 545 (2d Dep't 1998).

Affording the complaint a liberal construction, see Plumitallo v Hudson Atl. Land Co., LLC, 74 AD3d 1038, 1039, 903 N.Y.S.2d 127 (2d Dep't 2010), the Court finds that ESI has alleged sufficient facts from which it may be inferred that the Defendants knowingly participated in a fraudulent scheme to deprive the plaintiffs of a property right in the used cooking oil and

their contractual rights.  Accordingly, that part of the motion to dismiss the common-law conspiracy claim is denied.

B.   The Standard for a Preliminary Injunction

A party seeking a preliminary injunction must show "(1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking the injunctive relief." Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992)); see also Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010).  Preliminary injunctions are "extraordinary remed[ies] that should not be granted as a routine matter." JSG Trading Corp. v. Tray–Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990); see also Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

1.   The Motion by the RGS Defendants for a Preliminary Injunction

The Court first addresses the motion by the RGS Defendants for a preliminary injunction enjoining ESI from, among other things, using GPS technology in connection with *all* of ESI's competitors.  In so moving, the RGS Defendants make reference to the Fourth Amendment to the United States Constitution; the "fruit of the poisonous street' doctrine; and misappropriation of trade secrets.

As a procedural matter, the RGS Defendants have not answered ESI's complaint, nor have they asserted any affirmative claims against any party in this litigation.  Any claims not so raised by the RGS Defendants are not properly before this Court. See Rabbani v. Enzo Biochem, Inc., 682 F. Supp. 2d 400, 413 n. 10 (S.D.N.Y. 2010)(declining to consider an  unpleaded claim

on a motion for a preliminary injunction.)  Therefore, the Court declines to consider the propriety

of injunctive relief, or any relief, on these unpleaded claims.

Even were the Court to consider these unpleaded claims, the Court would find that the

RGS Defendants have failed to establish irreparable harm unless the injunction issues.  In

particular, the Court notes that the complained-of conduct – namely, ESI's use of GPS

technology to trace RGS's alleged theft of cooking oil – occurred in April 2012 and RGS was

made aware of such conduct no later than August 2013 when the complaint was served on all of

the RGS Defendants.  The RGS Defendants provide no credible reason justifying their delay in

bring the motion for a preliminary injunction.

In any event, at least with respect to any claims arising under the Fourth Amendment and

the "fruit of the poisonous tree" doctrine, the RGS Defendants have not shown that they are

likely to succeed on the merits, or a sufficiently serious question going to the merits, of these

unpleaded claims.

First, with respect to the Fourth Amendment claim, the RGS Defendant could state such a

claim under 42 U.S.C. § 1983 against a state actor, or a private actor working in concert with a

state official.  However, there is no such plausible allegation here.  Rather, the allegation is that a

private entity, ESI, with no assistance from a state official, engaged in the complained-of

conduct, which is not a viable scenario for a Fourth Amendment claim.

Second, the "fruit of the poisonous tree" is an evidentiary doctrine that does not apply in

civil matters. See Hargroves v. City of New York, 411 Fed. Appx. 378, 384 (2d Cir. 2011) ("The

'fruit of the poisonous tree' doctrine does not apply to civil actions brought under § 1983[.]");

see also Matthews v. City of New York, 889 F. Supp. 2d 418, 433-34 (E.D.N.Y. 2012) ("the

Second Circuit has held 'that the fruit of the poisonous tree doctrine may not be invoked to

support a § 1983 civil action, because the doctrine 'is an evidentiary rule that operates in the context of criminal procedure . . . and as such has generally been held to apply only in criminal trials.'") (citations omitted).

For the foregoing reasons, the Court denies the motion by the RGS Defendants for a preliminary injunction.

2.   ESI's Motion for a  Preliminary Injunction

The Court turns to the ESI's motion for a preliminary injunction against the Defendants, beginning with the element of irreparable harm.

i.   Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002).  Irreparable harm requires a plaintiff to show "(1) 'he is likely to suffer irreparable injury in the absence of an injunction'; (2) 'remedies at law, such as monetary damages, are inadequate to compensate for that injury'; (3) the balance of hardships tips in his favor; and (4) 'the public interest would not be disserved by the issuance of a preliminary injunction.'" Rex Med. L.P. v. Angiotech Pharms. (US), Inc., 754 F. Supp. 2d 616, 620 (S.D.N.Y. 2010) (quoting Salinger v. Colting, 607 F.3d 68, 74-75 (2d Cir. 2010)).  The alleged injury must be "actual and imminent, not remote or speculative." Kamerling, 295 F.3d at 214.

"The loss of good will constitutes irreparable harm . . . [and t]he interruption of the availability of a necessary good can negatively effect the [purchaser]'s good will even if the interruption is brief." Gulf Oil Ltd. P'ship v. Smerci, CV–12–4731 (SJF)(WDW), 2013 WL 394893, at *6 (E.D.N.Y. Jan. 30, 2013) (citation and quotation marks omitted); Nature's Enters.,

Inc. v. Pearson, 08 Civ. 8549 (JGK), 2008 WL 4700547, at *3 (S.D.N.Y. Oct. 24, 2008) ("The potential loss of customers and goodwill in this case is irreparable through monetary damages because it cannot be quantified; there is no way to determine how many customers the plaintiff will lose either because it is being undersold by [the defendant] or because its products acquire a bad reputation due to the low quality of the duplicates sold on [the defendant's website]."). Irreparable harm can also be established where the applicant for a preliminary injunction is threatened with the loss of a product that "is essential to the life of the business." Tom Doherty Assocs. v. Saban Entm 't Inc., 60 F.3d 27, 37 (2d Cir. 1995).

Here, the Court finds that ESI has established irreparable harm, absent a preliminary injunction, through the loss of good will. In particular, the record indicates ESI's customers are not only refusing to do business with ESI in the future, but they are providing negative reviews about ESI to other restaurants. (D. Parisi Decl. ¶ 37.); cf. True Fit Corp. v. True & Co., CIV.A. 12-11006 (GAO), 2013 WL 789213, at *7 (D. Mass. Mar. 4, 2013)("True Fit offers no evidence of ongoing negative reviews about True & Co and fails to support its position that any injury sustained cannot be adequately compensated at a later time.") These negative reviews invariably damage ESI's reputation. The Court also notes that the irreparable harm is ongoing, in that there is evidence that the Defendants have stolen oil from ESI containers, even after the filing of this complaint and thus being made aware of the underlying allegations.

The Court further finds that the Plaintiff has established irreparable harm by the loss of business for a product – used cooking oil – that "is essential to the life of the business." Indeed, there is evidence in the record that the collection and sale of waste kitchen oil comprises over 50% of ESI's business. (D. Parisi Decl. ¶ 38.)

The Defendants contend that the ESI had an obligation to mitigate their damages and its failure to do so proscribes any finding of irreparable harm.  However, the Court finds that the ESI has attempted to mitigate their damages, making sure to lock its oil containers while investigating and prosecuting the alleged theft.

The Defendants also attribute the ESI's monetary losses to other factors, such as ESI's not paying customers for oil it collects.  However, this denial simply goes to the heart of the ESI's case, which is based on the assertion that the Defendants' theft of ESI's oil induces ESI's customers into wrongfully believing that ESI collected oil without paying for it.

Finally, the Defendants contend that ESI's delay in seeking a preliminary injunction precludes a finding of irreparable harm.  Delay in seeking a preliminary injunction can weaken a claim of irreparable harm because "the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief." Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995)(citation and quotation marks omitted).

The complaint was filed on August 13, 2013, in which it made the allegations that the Defendants had stolen ESI's used cooking oil and was stealing its customers.  However, ESI did not move for a preliminary injunction until January 15, 2014, five months later.  The Court also notes that the ESI has not moved for a temporary restraining order against the Defendants pending a determination of the preliminary injunction.

"In assessing irreparable harm, courts may consider undue delay, if any, in the application for the preliminary injunction." N. Atl. Operating Co., Inc. v. Evergreen Distributors, LLC, 13-CV-4974 (ERK)(VMS), 2013 WL 5603602, at *12 (E.D.N.Y. Sept. 27, 2013), report and recommendation adopted, 13-CV-4974 (ERK)(VMS), 2013 WL 5603596 (E.D.N.Y. Oct. 11, 2013)

Prior to the Second Circuit's decision in Salinger, a finding of delay defeated the presumption of irreparable harm. See e.g., Weight Watchers Int'l. Inc. v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005). However, now that courts may not presume irreparable harm, the effect of a finding of delay is uncertain. New Look Party Ltd. v. Louise Paris Ltd., 11 CIV. 6433 (NRB), 2012 WL 251976, at *10 (S.D.N.Y. Jan. 11, 2012) ("[Delay] is now simply one factor to be considered in determining whether a plaintiff will, in fact, suffer irreparable harm in the absence of a preliminary injunction."); Marks Org., Inc. v. Joles, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) ("[Salinger] leaves open the question of what effect Plaintiff's delay should have on the Court's determination of irreparable injury."). However, courts recognize that a plaintiff's good faith efforts to investigate infringement can justify delay. Tough Traveler, 60 F.3d at 968.

Here, the Court notes that ESI filed the complaint in August 2013 and knew about the Defendants' alleged stealing since 2011. However, the record suggests that Grease Lightning was caught stealing ESI's oil as recently as November 27, 2013, after the complaint was filed and only seven weeks prior to the filing of ESI's motion for a preliminary injunction. (D. Parisi Decl. ¶ 20.) In this Circuit, significantly longer periods of time have not foreclosed a finding of irreparable harm. See e.g., Bulman v. 2BKCO, Inc., 882 F. Supp. 2d 551, 564-65 (S.D.N.Y. 2012) (delay of several months did not preclude a finding of irreparable harm); Marks Org., 784 F. Supp. 2d at 332-36 (granting a preliminary injunction despite nearly a sixteen-month delay between learning of infringing conduct and filing of motion by the moving party).

The Court also finds that, unlike the delay by the RGS Defendants, the delay by ESI, whether measured from August or November 2013, was excusable because the delay was caused, in part, by having to respond to two motions to dismiss. Marks Org., 784 F. Supp. 2d at

28

333 (finding that the delay caused by, among other things, a pending motion to dismiss, was excusable).

In short, the Court finds that the Plaintiff has established the element of irreparable harm absent the issuance of a preliminary injunction against the Defendants.

ii.  Likelihood of Success on the Merits

"The Court of course is aware that the question whether a private plaintiff may obtain injunctive relief under RICO remains open in this and most other circuits." Chevron Corp. v. Donziger, 871 F. Supp. 2d 229, 254 (S.D.N.Y. 2012); compare e.g. Allstate Ins. Co. v. TMR Medicbill Inc., CV-00-0002 (CPS), 2000 WL 34011895, at *17 (E.D.N.Y. July 13, 2000) (granting a preliminary injunction based on likelihood of success of RICO claim), with Bernard v. Taub, No. CV 90–0501 (ADS), 1990 WL 34680, at *3 (E.D.N.Y. Mar. 21, 1990)(Spatt, J.)("this Court is of the view that Congress did not empower the district courts to grant provisional relief in the form of preliminary injunction to private plaintiffs in civil RICO cases.")

However, the Court need not resolve the question of whether a private plaintiff such as ESI may obtain injunctive relief in a RICO case. This is because, in the Court's view, ESI has established, in addition to irreparable harm unless the injunction issues, a likelihood of success on the merits of another cause of action – namely, the New York State law claim of tortious interference with the contracts of ESI's customers.

As noted above, "[t]he elements of a cause of action alleging tortious interference with contract are: (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of the third party's breach of that contract, and (4) damages." Chung, 79 A.D.3d at 694, 912 N.Y.S.2d 647.

Here, the Court finds ESI have provided sufficient evidentiary support for each of these elements.

Relying on the automatic renewal clauses in the procurement contracts, the Defendants contend that ESI's contracts are unenforceable because they are for an indefinite duration and are, therefore, terminable at will by the customer.  However, the fact that the contracts may be terminable at will does not mean they are also unenforceable from their inception.

Further, contrary to the contention of the Defendants, the procurement contracts do not fail to comply with the provisions of New York General Obligations Law § 5-903(2), which states, in pertinent part, as follows:

> No provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract service, maintenance or repair of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service, maintenance or repair, unless the person furnishing the service, maintenance or repair, at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.

"Section 5-903 of the General Obligations Law 'was enacted to protect small businessmen who unwittingly find themselves 'married' to self-renewing maintenance or service-type contracts.'" Mobile Diagnostic Testing Servs., Inc. v. TLC Health Care Network, 19 A.D.3d 1145, 1146, 796 N.Y.S.2d 824 (4th Dep't 2005)(citation omitted).

The Court need not decide the question whether the procurement contracts here involved a sale of goods or sale of services.  As the statute makes clear, Section 5-903 applies only to personal or real property, not commercial property like the oil purchased by ESI.  Thus, the

Court finds that the procurement contracts here were not the type of contract within the contemplation of the New York State Legislature when it enacted Section 5-903.

The Defendants also assert that a liquidated damages provision in the procurement contracts is, in fact, an unenforceable penalty. The rule of law in New York is that a liquidated damages provision is enforceable only to the extent that it constitutes "an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement." JMD Holding Corp. v. Congress Fin. Corp., 4 N.Y.3d 373, 380, 795 N.Y.S.2d 502, 828 N.E.2d 604 (2005). However, even if a liquidated damages provision is an unenforceable penalty, the remainder of the contract may be valid and enforceable. See id.

As to the remainder of the elements of the claim for tortious interference with contract, the Court finds that ESI has come forth with sufficient evidentiary proof to establish that it is likely to prove the Defendants' knowledge of the ESI contracts; the Defendants' intentional procurement of the third party's breach of that contract; and damages. In particular, ESI have established a likelihood that the Defendants were aware of the underlying contracts, particularly given that (1) the oil came from ESI-branded containers and (2) the Defendants sent Termination Letters to ESI on behalf of ESI's customers. (D. Parisi Decl, ¶¶ 19, 33.)

ESI also submits documentary evidence, in the form of GPS tracking reports and surveillance photographs, establishing a likelihood that the Defendants did, in fact, conspire to steal ESI's oil; fraudulently induce ESI's customers into believing that ESI was collecting but not paying for the oil; and then contact ESI's customer's and procure a breach of ESI's contracts by sending the Termination Letter of behalf of ESI's former customers. (Id. ¶¶ 2, 3, 8; J. Parisi Decl. ¶¶ 2-10.) In this regard, the Court rejects the Defendants' conclusory assertion, as not

supported by the record, that they obtained contracts with former ESI customers through lawful canvassing and solicitation calls.

The Defendants also contend that none of the arrests for theft resulted in any convictions. However, to prevail on its tortious interference claim, ESI is not required to prove that the Defendants engaged in any criminal misconduct.

The Defendants further maintain that there is no allegation that the Termination Letters did not contain the customers' actual authorization.  However, the Defendants misstate ESI's position.  ESI does not contend that its former customers did not sign the Termination Letters. Rather, ESI contends that those letters were procured by fraud.  Further, although not necessary to prevail on its fraud claim, the Plaintiffs have established a likelihood that the statement that the customer had "decided to use another delivery service due to their ability to serve my needs better" was itself false.

Finally, the Defendants contend that the total amount of oil Unity collected in the Long Island market since it started doing business there in April 2012 does not approach the alleged lost number of gallons suffered by the Plaintiffs.  Thus, the Defendants assert, other factors contributed to the Plaintiffs' alleged losses.  However, this contention speaks to the measure of damages, not to the fact that the ESI has established a likelihood that it did, in fact, suffer damages as a result of the Defendants' alleged conduct.

In short, the Court finds that ESI has demonstrated a likelihood of success on its claim under New York State law for tortious inference with contract.  However, at this early stage of the litigation, the Court makes no statements about the merits of ESI's remaining claims, including the RICO and state law conversion/misappropriation claims.

## III. CONCLUSION

In conclusion, the Court grants in part and denies in part the Defendants' motions to dismiss. The Court further denies the motion by the RGS Defendants for a preliminary injunction.

Finally, the Court grants ESI's motion for preliminary injunctive relief. The Court recognizes that "[i]njunctive relief should be narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity." Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994) (citing Soc'y for Good Will to Retarded Children, Inc. v. Cuomo, 737 F.2d 1239, 1251 (2d Cir. 1984)). In this case, the Court finds that ESI's proposed preliminary injunction enjoining the Defendants "from (1) interfering with servicing ESI's customers reflected in the contracts . . . (which contracts were improperly interfered with by Defendants); (2) from (further) interfering with any of ESI's contracts with its remaining customers; and (3) (stealing) any (further) waste cooking oil from ESI, and for such other and further relief as this Court may deem just and proper" is appropriate, with the caveat that the Court removes as unnecessary the references to past interference by the Defendants.

For the foregoing reasons, it is hereby

ORDERED, that the Defendants' motions to dismiss are granted in part and denied in part. The motions are granted to the extent the New York General Business Law § 349 claims are dismissed. The Defendants' motions to dismiss are denied with regard to the claims under RICO, for conversion or misappropriation, tortious interference with contract, and conspiracy; and it is further

ORDERED, that the motion by the RGS Defendants for a preliminary injunction against the Plaintiff is denied; and it is further

33

ORDERED, that the motion by ESI for a preliminary injunction against the Defendants is granted.  The Defendants are enjoined from (1) interfering with servicing ESI's customers reflected in the contracts attached to ESI's notice of motion; (2) interfering with any of ESI's contracts with its remaining customers; and (3) removing any waste cooking oil from the premises of ESI's customers.

**SO ORDERED.**
Dated: Central Islip, New York
March 25, 2014

_*Arthur D. Spatt*_
ARTHUR D. SPATT
United States District Judge